### THE STATE, ELIZABETH HAMPTON, PROSECUTRIX, v. HELEN L. POLAND ET AL.

1. The Road act (*Rev.*, *p.* 993), requires of the surveyors of the highways to determine on the necessity for the road applied for. If they determine it to be a matter of public need, they are required to lay the road as it may appear to them to be most for the public and private convenience, having regard to the best ground and shortest distance. When they certify that the statutory requirements have been observed by them, their judgment will not be reviewed on *certiorari*, either as to location or as to the necessity for the road.

2. A road proceeding will not be set aside because the application and appointment described minutely the courses and distances of the road to be laid out.

3. One of the applicants for the alteration of a public road represented to the surveyors, as an inducement to them to make the proposed alteration, to pay all damages and expenses of said alteration, and by reason of such representations the township committee were induced not to oppose said alterations.—*Held*, that the return of the surveyors should be set aside, on the ground that the course of the applicant to suppress and hush, by illegal promises, opposition based on public consideration, violates the spirit and policy of the road law.

---

On *certiorari*. In matter of road.

Argued at November Term, 1887, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the prosecutrix, *John J. Ely.*

For the defendants, *J. Clarence Conover.*

The opinion of the court was delivered by

KNAPP, J. This writ brings up proceedings of surveyors of the highways of the county of Monmouth, in vacating a public road in the township of Howell, in said county, and laying out another road in its stead, on the application of the defendants in *certiorari*.

Among the reasons urged against the validity of this return it is said that it appears by the map and return that " regard was not had to the shortest distance; that the alteration is not most for the public and private convenience, and does not do the least injury to private property; that the alteration is not necessary for the public benefit but is detrimental to it."

The Road act requires of the surveyors of highways, when acting under appointment of the court, to determine on the necessity for the road applied for. If they determine it to be a matter of public need, they are required to lay the road " as it may appear to them to be most for the public and private convenience, having a regard to the best ground for a road, and the shortest distance, in such a manner as to do the least injury to private property," and they must certify in their return that they have observed these statutory directions. If they fail to so certify, the court, on reviewing their proceedings, will presume that they have neglected the statutory requirements, and set aside their return for that reason. *State* v. *Yauger*, 5 *Dutcher* 384.

In the present case it appears by the certificate in the return that these requirements were observed by them. And this court has said that " When the route and length of a road have been adopted by the surveyors, in the fair and proper exercise of the limited and qualified discretion which the law gave them, their judgment upon these matters will not be reviewed by this court on *certiorari*." *State* v. *Pierson*, 8 *Vroom* 363; *Matter of Highway*, 2 *Zab.* 293.

In the case of State *v.* Pierson, as in this, the return manifested that the shortest route had not been adopted by the surveyors.

Nor will the court pass judgment upon the necessity of a

public highway. Its language on this subject is that "the jurisdiction to determine whether the public road applied for is necessary for public convenience is lodged exclusively in the surveyors of the highways." *State* v. *Bishop*, 10 *Vroom* 227.

A further objection to the proceedings and return is that the application and the appointment described minutely the courses and distances of the road to be laid out.

This course of practice on the part of applicants for a public highway has been regarded as an improper one because it limits the discretion of the surveyors to the adoption of the line pointed out in those proceedings. *Matter of Road*, 1 *South*. 31.

But in no case in this state has a road proceeding been set aside for this objection. The applicants who bear the expense, take the risk that the surveyors may find a better ground for laying the road than that directed in the application and appointment, and therefore refuse to lay the road as applied for. The payment of costs consequent upon the failure is considered a sufficient penalty.

It is further objected that "the husband and agent of Helen L. Poland, one of the applicants for the alteration of the said public road, represented to the surveyors of the highways, at the time they met for the purpose of viewing and examining the proposed alteration of said public road, and before their determination in regard thereto, as an inducement to them to make the proposed alteration, that in case they made said alteration he or his wife would, at their own expense, grade and put the road to be laid out in as good condition as the road to be vacated then was, and would pay all damages and expenses of said alteration, and that the township of Howell should be put to no expense on account thereof." And further, "that the said husband and agent of Helen L. Poland represented to the township committee of Howell that in case the surveyors of the highways altered said public road in the manner above mentioned in their return, he or his wife would be at all the expense of said

alteration, and the township of Howell should be at no expense on account thereof, and by reason of said representations they were induced not to oppose and consequently did not oppose said alteration."

I think it is a fair conclusion, from the testimony taken in the cause, that the substantial facts stated in these reasons were established. The question is whether they, or either of them, constitute a ground for setting aside the action of the surveyors of the highways.

In *State* v. *Stites*, 1 *Green* 172, the court was asked to set aside the return of surveyors because freeholders called in review had failed to certify against it, they being moved to such action, as was alleged, by an offer to them if they would confirm the road as laid by the surveyors to give a bond to work the road for ten years, and to indemnify the township and the county from the expenses of bridges. The freeholders failed to certify against the road and called for the bond, which was given. Chief Justice Ewing, in commenting on this part of the case, says: "Such an inducement, if it existed and operated, was very reprehensible. I am, however, by no means prepared to say that we are legally authorized to inquire into the motives which may have influenced, or the causes which may have induced the determination of the freeholders and make them the basis of an order to set aside the return. I am apprehensive the same course of reasoning which will sustain such a measure will compel us to listen to the merits, as it is called, of a road, or the expediency or propriety of it." In commenting upon the testimony of witness to these facts, he says: "But all that is stated by the witness may have occurred, and yet no one thereby have been induced to support the road. He does not venture to say that any one otherwise opposed was thereby rendered friendly to it. They, the freeholders, may, without incurring censure, have called on the applicant to fulfill his offer when it appeared that, according to their honest and unbiased judgment, his wishes would be gratified. There is, then, no explicit affirmative proof that any one of the freeholders was actuated

by the alleged motive or inducement. I cannot, on such slight grounds, justify, in my own mind, a presumption discreditable to the freeholders and a severe reproach upon their heads if not upon their hearts." See, also, *State* v. *Smith*, 1 *Zab.* 91.

In the *Matter of Highway*, 2 *Zab.* 293, which was a motion to set aside the return of surveyors of highways, it appeared in proof that the surveyors hesitated about laying out the road on account of the expense which the long and expensive bridges would throw upon the county, and this objection was obviated by the assurance given during their deliberations by the counsel for the applicants that these bridges would be built by a person who was organizing a company for that purpose, and would not involve the county in any expense.

The return was set aside on another ground, and the court, without discussing the other reasons, said there was in them no sufficient ground for setting aside the proceedings.

In *State* v. *Stites*, *supra*, the court was asked to set aside the return of the surveyors, which the statute orders to be recorded on failure of the freeholders to certify against it, because of the alleged illegal action of the freeholders, a fact noticed by the court in the opinion.

The laying of highways is peculiarly a matter of public concern; its design is to promote not private rights but the public convenience. Private interests are affected but incidentally only in the pursuit of the public good. Surveyors of highways, in laying out public roads, exercise the right of eminent domain. Where the public interests require it the land-owner must surrender up his land upon compensation, but he should not be compelled to yield it except as public interest shall require it. It is true the law has intrusted the management of proceedings for laying public highways to private hands, but applicants for public roads, although moved to become so by considerations of merely private interest, voluntarily assume the conduct of public interest, one in which all members of the community charged with the duty of making and maintaining roads have an equal interest

with themselves not only to secure the laying of those which the public need calls for, but to oppose and prevent such as are not demanded by the public interest.

The applicant may not resort to every measure in the successful execution of his assumed office, which, in a private undertaking, would be regarded as legal.

In *Smith* v. *Applegate*, 3 *Zab.* 352, a contract made between applicants for a road and one who opposed such laying, to pay money for the withdrawal of his *caveat* and opposition, was held illegal because violative of the policy of the road law. Nor are they permitted to pay to the surveyors of highways, who determine upon the necessity of a public road, money in excess of their legal fees.

In *State* v. *White*, 6 *Vroom* 203, a road return was set aside because of such excessive payment, not because it appeared that the surveyors were corruptly influenced in their action by the hope of larger compensation, but because it was wrong in the applicant to pay it and in the surveyors to receive it, tending, as it did, to weaken confidence and respect of those upon whose rights they were called upon to pass.

There is no doubt that the members of the township committee, as individuals as well as representing that body, were opposed to the alteration of this road on the ground that, in their belief, the public interest did not require it, and had taken steps to oppose the road before the surveyors. It is equally clear that the promise to make the road and save the township from expense induced them to withdraw their opposition. They opposed the road from the conviction either that the change was not warranted by any public necessity or that the necessity was not commensurate with the expense that would result. And as the law has entrusted to private hands, not only the advocacy but the opposition to public roads, it was an injury to the land-owner as well as to the public to suppress an honest expression of these convictions by a promise to pay money in the public relief, for if the applicant, moved by a private interest, may buy off that opposition springing from public considerations, it will not be

impossible or perhaps difficult to appropriate private property to what is in essence a mere private use.

It is not perceived how such a course of action differs in character from the purchased withdrawal of a *caveat*. The same rule of policy which holds the one offer to be illegal should condemn the other, for both are equally illegal and could not as contracts be enforced.

In State *v.* Stites the fact is noted that the evidence did not make it appear that any one was, by the offer made, rendered friendly to it. In this case the offer silenced an opposition, which if urged on the basis upon which it was made might have been cogent.

The law does not ascribe to the body of surveyors infallibility of judgment. The policy which invites all to a hearing before the surveyors and enjoins it upon the surveyors to hear them for or against the public measure, and declares their right to be heard for or against the road, implies that their judgment will be instructed and influenced by individual opinions and suggestions. A course of action on the part of the applicants, standing as public procurators to suppress and hush by illegal promises oppositions based on public considerations, violates the spirit and policy of the road law. To press such invalid promises in the relief of the public burdens which the road will impose upon those officers charged with the duty of deciding upon the public and private rights, must be damaging to the public as well as the opposing landowner. True, we may not probe the motives which finally control in the decision of surveyors, nor look into the merits of a road laid, yet we may and ought to regard the means used to shape the decision of such tribunals, and when they prove to be illegal and of such force as is calculated and likely to lead to erroneous or oppressive judgment, a shape of evil is presented that the court should repress.

It is one thing to inquire into the motives which shape a judgment and another and different thing to guard the judicial body from improper and illegal influences such as are liable or likely to misshape its judgment.

Jones v. Landis Township.

The owner of land has the right to demand that the public necessity for taking his lands from him shall be determined upon the inherent merits of the application. The public necessity which may be too weak in itself to demand that sacrifice of the private land-owner, gains nothing in strength from the willingness of a citizen, because of private interest, to assume all or an undue share of the resulting public burden.

The course pursued by the applicants was a wrong to the public and to the relator, whose lands are taken against her consent, and the only efficient remedy is to set aside the return.

It is therefore set aside, with costs.